IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC A. CHAMBERS,      :<br>      Petitioner  :<br>                        :<br>   v.                   :<br>                        :<br>SUPERINTENDENT KLINEFELTER,   :<br>      Respondent   : | No. 1:23-cv-00502<br><br>(Judge Kane) |

**MEMORANDUM**

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2254 through which Petitioner Eric A. Chambers ("Chambers") challenges his 2013 convictions and sentences for attempted murder, aggravated assault, unlawful possession of a firearm, carrying a firearm without a license, simple assault, and recklessly endangering another person in the Dauphin County Court of Common Pleas.  The Court will deny the petition with prejudice.

**I.      BACKGROUND**

The state courts of Pennsylvania have succinctly summarized much of the relevant factual background of this case.  On July 17, 2013, Jalil Walters was drinking at a bar with his brothers, Ibrahiim Muhammad and Lewin Chism, Jr., and their friend, Mike Burgress.  See Commonwealth v. Chambers, No. 1961 MDA 2013, 2014 WL 10558243, at *1 (Pa. Super. Ct. Nov. 25, 2014).  Chism told the others that he wished to leave the bar because he thought some of the patrons in the bar were "thugs and gangsters."  See id.  They left the bar, and Chambers and Demond Bates, a security guard at the bar, followed them.  See id.  Chambers approached Chism and asked him what he had said about the customers in the bar.  See id.  Chambers then pointed a gun at Chism's face.  See id.  The brothers asked Bates to intervene, but he refused. See id.  Chambers then concealed the gun on his person and went back into the bar.  See id.

A short time later, Chambers came out of the bar and stated that he was going to kill one of Walters's group.  See id.  He pointed a gun at Muhammad's chest and pulled the trigger, at which point Walters jumped in front of Muhammad and took the bullet that Chambers shot.  See id.  Walters was hospitalized for several days after the incident and underwent two surgeries.  See id.  The bullet shattered his left elbow before settling in his abdomen.  See id.  The doctors treating him were unable to remove the bullet from his abdomen without risking a rupture of his internal organs.  See id.

Chambers was tried and convicted of attempted murder, aggravated assault, unlawful possession of a firearm, carrying a firearm without a license, simple assault, and recklessly endangering another person.  See id. at *2.  He was sentenced to 25–50 years of imprisonment and ordered to pay a $4,000 fine.  See id.  Chambers appealed, arguing, inter alia, that his due process rights were violated because the criminal information that charged him with a crime listed the attempted victim of the crime as Walters while the jury instructions during trial stated that Muhammad was the intended victim.  See id.  The Superior Court vacated the sentence in part, remanding the case for partial resentencing with respect to the fine portion of Chambers's sentence, but otherwise affirmed the judgment of sentence on November 25, 2014.  See id. at *8.  Chambers filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on June 2, 2015.  See Commonwealth v. Chambers, 116 A.3d 602 (Pa. 2015).

On July 24, 2015, Chambers filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA").  See Commonwealth v. Chambers, 292 A.3d 1085 (table), 2023 WL 129426, at *2 (Pa. Super. Ct. Jan. 9, 2023).  Following protracted proceedings regarding whether Chambers voluntarily waived his right to counsel in the PCRA proceedings, counsel's subsequent request to withdraw from representing Chambers, and

Chambers's request to proceed pro se, the Court of Common Pleas dismissed the PCRA petition on January 27, 2022.  See id.  Chambers appealed, arguing, inter alia: (1) that his due process rights were violated during trial because Muhammad was never listed as the victim of the crime in his charging documents but was named as the victim in the trial court's jury instructions; (2) that his counsel provided ineffective assistance by failing to raise these due process issues; and (3) that his sentence exceeded the statutory maximum allowable sentence.  See id. at *3–4.  The Superior Court affirmed dismissal of the PCRA petition, holding in relevant part: (1) that Chambers waived the claim that the sentence exceeded the statutory maximum; (2) that Chambers's claim relating to the naming of Muhammad as the victim in the jury instructions was previously litigated on direct appeal; and (3) that the ineffective assistance of counsel claim failed on its merits.  See id. at *4–7. Chambers did not appeal to the Pennsylvania Supreme Court.

Chambers filed the instant petition on March 15, 2023, and the Court received and docketed the petition on March 22, 2023.  (Doc. No. 1 at 15.)  He filed a supporting brief on the same day.  (Doc. No. 2.)  Chambers advances four claims for habeas corpus relief: (1) that his trial counsel provided ineffective assistance of counsel by failing to object to an illegal sentence; (2) that his due process rights were violated because he was convicted and sentenced for the attempted murder of Muhammad despite Muhammad not being named as the victim in the information charging him with the crime; (3) that his sentence for attempted murder was illegal and unconstitutional because a sentence of 20–40 years' imprisonment for attempted murder requires the victim to suffer serious injuries but Muhammad suffered no injuries; and (4) that he was subjected to an illegal and unconstitutional sentence because he was sentenced to 9–18 years of imprisonment for a Grade 2 felony, despite 5–10 years purportedly being the maximum

3

sentence for such a conviction under Pennsylvania law.  (Doc. No. 1 at 5–10.)  Chambers's supporting brief indicates that his ineffective assistance of counsel claim is based on counsel's failure to object to the variance between Walters being the named victim in the information and Muhammad being named as the victim in the court's jury instructions.  (Doc. No. 2 at 2.)

Respondent, the Superintendent of Houtzdale State Correctional Institution ("SCI-Houtzdale"),[1] where Chambers is currently incarcerated, responded to the petition on May 1, 2023.  (Doc. No. 8.)  Chambers filed a "motion to dismiss" the response on May 24, 2023, wherein he argues that the response should not be considered by the Court because it was untimely.  (Doc. No. 9.)

**II.    DISCUSSION**

    **A.    The Court Will Grant Plaintiff's Motion in Part and Decline to Consider Respondent's Arguments**

At the outset, the Court considers Chambers's "motion to dismiss" Respondent's response, which seeks to strike the response as untimely.  (Doc. No. 9.)  The Court agrees with Chambers that Respondent's response is untimely.  In its April 10, 2023 Order, the Court ordered Respondent to respond to the petition within twenty days.  (Doc. No. 6.)  Respondent responded to the petition twenty-one days after the Court's Order, on May 1, 2023, and did not offer any explanation for the failure to comply with the court-imposed deadline.  (Doc. No. 8.)  Respondent has also failed to respond to Chambers's request to dismiss the response as untimely.

---

[1] The electronic docket of this case additionally lists as respondents the Pennsylvania Attorney General's Office and the District Attorney of Dauphin County.  Because the petitioner's immediate custodian is the proper respondent to a petition for writ of habeas corpus, see, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004), the Court will direct the Clerk of Court to terminate these entities as respondents and will refer to the Superintendent of SCI-Houtzdale as "Respondent" for the remainder of this opinion.

Although Chambers's motion seeks to strike Respondent's response based on the failure to comply with the court-imposed deadline, the Court finds that the better course is to simply disregard the arguments raised in Respondent's brief as improperly before the Court. See, e.g., Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., No. 1:12-cv-00993, 2016 WL 7117455, at *7 (M.D. Pa. Dec. 7, 2016) (denying party's request to strike improperly filed document because federal court's power to strike documents should be read narrowly, but declining to consider improperly filed document). The Court will accordingly grant Chambers's motion in part and decline to consider Respondent's arguments in reviewing the petition and the state court record.

### B. Merits[2]

Chambers's claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Although it appears that some of Chambers's claims may be procedurally defaulted, see Chambers, 2023 WL 129426, at *4, procedural default "is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." See Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 281 n.11 (3d Cir. 2018) (quoting Trest v. Cain, 522 U.S. 87, 89 (1997)). Respondent's failure to file a timely response to Chambers's habeas corpus petition constitutes a waiver of the procedural default defense. Cf. Hull v. Kyler, 190 F.3d 88, 98 (3d Cir. 1999) (finding that state can waive procedural default by failing to file brief raising the issue). The Court accordingly proceeds to consideration of the merits of Chambers's claims.

See 28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet." See Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal." See Harrington, 562 U.S. at 102–03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions," see Dunn v. Reeves, 141 S. Ct. 2405, 2407 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement." See Mays, 141 S. Ct. at 1149 (quoting Harrington, 562 U.S. at 102).

When considering an ineffective assistance of counsel claim under AEDPA, the court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate. See Dunn, 141 S. Ct. at 2410. The court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate. See id.; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)). The federal court may only grant habeas corpus relief if "_every_ 'fairminded jurist' would agree that _every_ reasonable lawyer would have made a different decision." See id. at 2411 (emphasis in original) (quoting Harrington, 562 U.S. at 101).

The Court will first consider Chambers's argument that his due process rights were violated when the information named a different victim than the jury instructions used during trial. (Doc. No. 1 at 7.) This argument is based on supposed discrepancies between the language

6

of the information charging Chambers with attempted murder and the trial court's jury instructions.  (Doc. No. 2 at 4.)  The relevant portion of the information states that Chambers "did, with the intent to commit a specific crime, do an act which constituted a substantial step toward the commission of that crime."  (Doc. No. 2 at 16.)  The information charges that the "specific crime attempted" was "murder" and that the act Chambers performed was "Jalil Walters suffer[ing] gunshot wounds to the upper body."  (Id.)  Muhammad is not listed as a victim in the information.  (Id.)  In the relevant portion of the jury instructions, the trial court stated the following:

> To find the defendant guilty of this offense, you must find the following three elements have been proven beyond a reasonable doubt.  First, that the defendant did a certain act; that is, he fired a handgun at Ibrahiim Muhammad.  Second, that at the time of this act – alleged act, the defendant had the specific intent to kill Ibrahiim Muhammad.  That is, he had a fully formed intent to kill and was conscious of his own intentions.
>
> And third, that the act constituted a substantial step toward the commission of the killing the defendant intended to bring about.

(Doc. No. 8-7 at 368.)  Chambers asserts that basing the attempted murder conviction and sentence on his firing a gun at Muhammad violated his right to due process because the information only named Walters with respect to the attempted murder charge.  (Doc. No. 2 at 4.)

This claim was decided on its merits in state court and is therefore subject to AEDPA's deferential standard of review.  See 28 U.S.C. § 2254(d).  The Superior Court found that Chambers's argument was "factually incorrect" because "[t]he information did not identify a victim or intended victim with regard to attempted murder" and only stated that Walters "suffered gunshot wounds to his upper body as a result of the commission of the crime."  See Chambers, 2014 WL 10558243, at *4.  "Thus," the court concluded, "appellant's argument that

the Commonwealth put him on notice that it intended to prove at trial that the defendant attempted to kill Jalil Walters is erroneous." See id. (internal quotation marks omitted).

The Court finds that the Superior Court's decision was not contrary to clearly established federal law. The Superior Court found that the information satisfied the standards for an information under Pennsylvania law, which recognize that "[a]n Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events." See Commonwealth v. Alston, 651 A.2d 1092, 1095 (Pa. 1994). These standards are essentially identical to the standards for charging documents under the United States Constitution, which state that an indictment or information "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." See Hamling v. United States, 418 U.S. 87, 117 (1974). Thus, the Superior Court's decision that the information complied with Pennsylvania law was neither contrary to clearly established federal law nor an unreasonable application of clearly established federal law.

There is also no basis to conclude that the Superior Court's decision was based on an unreasonable determination of the facts. The court found that, contrary to Chambers's argument, the information did not allege that Chambers intended to kill Walters; it simply alleged that Chambers, acting with an intent to commit murder, took an action that caused Walters to suffer gunshot wounds. See Chambers, 2014 WL 10558243, at *16. The Court agrees with this reading of the information. The information does not charge a specific victim with respect to the attempted murder charge but rather simply states that Walters suffered gunshot wounds from the

actions that gave rise to the attempted murder charge. There is no basis to conclude from the information that the Commonwealth was asserting that Chambers had an intent to kill Walters.

Moreover, it is of no moment that the attempted murder charge was based on Chambers having an intent to kill Muhammad but subsequently shooting Walters. Pennsylvania law recognizes the doctrine of "transferred intent," whereby a defendant's specific intent to kill one individual is "transferred" when the defendant's actions result in harm to an individual different from the individual he intended to harm. See, e.g., Commonwealth v. Nevels, 203 A.3d 229, 242 n.13 (Pa. Super. Ct. Jan. 18, 2019). Hence, the Court finds Chambers's argument for habeas corpus relief unavailing.

Chambers's third claim for habeas corpus relief—that his sentence for attempted murder is illegal and unconstitutional because a sentence of 20–40 years' imprisonment for attempted murder requires the victim to suffer serious injuries but Muhammad suffered no injuries—is similarly unavailing. The victim of Chambers's actions was Walters, who clearly suffered serious injuries from Chambers's actions. The trial court's jury instructions noting that the attempted murder conviction rested on a finding that Chambers had the intent to kill Muhammad does not alter this fact. See id. (noting that intent to commit murder can be transferred to different victim under the transferred intent doctrine).

Chambers's ineffective assistance of counsel claim also plainly fails. The claim is based on the assertion that counsel's failure to object to the variance between Walters being the named victim in the information and Muhammad being named as the victim in the court's jury instructions constituted ineffective assistance of counsel. (Doc. No. 2 at 2.) As noted above, however, the purported variance between the information and the trial court's jury instructions do not amount to a violation of Chambers's rights. Any objection to the variance would

therefore have been meritless, and counsel cannot be considered ineffective for failing to raise a meritless objection.  See Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Finally, Chambers asserts that he is entitled to a writ of habeas corpus because he was sentenced to 9–18 years of imprisonment for a Grade 2 felony despite 5–10 years purportedly being the maximum sentence for such a conviction under Pennsylvania law.  (Doc. No. 1 at 10.)  Chambers asserts that he was charged with aggravated assault under 18 Pa. C.S. § 2702(a)(4), which carries a maximum sentence of 5–10 years, but that he was subsequently convicted under 18 Pa. C.S. § 2702(a)(1), which carries a maximum sentence of 9–18 years.  (Doc. No. 2 at 8–9.)

Chambers's argument is belied by the state court record.  The information clearly states that he was charged with aggravated assault pursuant to 18 Pa.C.S. § 2702(a)(1).  (Doc. No. 8-2 at 40.)  This claim is accordingly without merit and the court will deny habeas corpus relief.

### III.  CONCLUSION

For the foregoing reasons, Chambers's petition for writ of habeas corpus will be denied with prejudice.  A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further.  See Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania