IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC A. CHAMBERS, : | |
|     Petitioner : | |
| : | No. 1:23-cv-00502 |
| v. : | |
| : | (Judge Kane) |
| SUPERINTENDENT KLINEFELTER, : | |
|     Respondent : | |

**MEMORANDUM**

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2254 through which Petitioner Eric A. Chambers ("Chambers") challenges his 2013 convictions and sentences for attempted murder, aggravated assault, unlawful possession of a firearm, carrying a firearm without a license, simple assault, and recklessly endangering another person in the Dauphin County Court of Common Pleas ("the Court of Common Pleas"). The Court denied the petition with prejudice on September 5, 2023, and denied a certificate of appealability. Chambers has filed a motion to alter or amend the Court's judgment pursuant to Federal Rule of Civil Procedure 59. For the reasons that follow, the Court will deny the motion.

**I.    BACKGROUND**

The state courts of Pennsylvania have succinctly summarized much of the relevant factual background of this case. On July 17, 2013, Jalil Walters was drinking at a bar with his brothers, Ibrahiim Muhammad and Lewin Chism, Jr., and their friend, Mike Burgress. See Commonwealth v. Chambers, No. 1961 MDA 2013, 2014 WL 10558243, at *1 (Pa. Super. Ct. Nov. 25, 2014). Chism told the others that he wished to leave the bar because he thought some of the patrons in the bar were "thugs and gangsters." See id. They left the bar, and Chambers and Demond Bates, a security guard at the bar, followed them. See id. Chambers approached Chism and asked him what he had said about the customers in the bar. See id. Chambers then

pointed a gun at Chism's face. See id. The brothers asked Bates to intervene, but he refused. See id. Chambers then concealed the gun on his person and went back into the bar. See id.

A short time later, Chambers came out of the bar and stated that he was going to kill one of Walters's group. See id. He pointed a gun at Muhammad's chest and pulled the trigger, at which point Walters jumped in front of Muhammad and took the bullet that Chambers shot. See id. Walters was hospitalized for several days after the incident and underwent two surgeries. See id. The bullet shattered his left elbow before settling in his abdomen. See id. The doctors treating him were unable to remove the bullet from his abdomen without risking a rupture of his internal organs. See id.

Chambers was tried and convicted of attempted murder, aggravated assault, unlawful possession of a firearm, carrying a firearm without a license, simple assault, and recklessly endangering another person. See id. at *2. He was sentenced to 25–50 years of imprisonment and ordered to pay a $4,000 fine. See id. Chambers appealed, arguing, inter alia, that his due process rights were violated because the criminal information that charged him with a crime listed the attempted victim of the crime as Walters while the jury instructions during trial stated that Muhammad was the intended victim. See id. The Superior Court of Pennsylvania ("the Superior Court") vacated the sentence in part, remanding the case for partial resentencing with respect to the fine portion of Chambers's sentence, but otherwise affirmed the judgment of sentence on November 25, 2014. See id. at *8. Chambers filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on June 2, 2015. See Commonwealth v. Chambers, 116 A.3d 602 (Pa. 2015).

On July 24, 2015, Chambers filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). See Commonwealth v. Chambers, 292

A.3d 1085 (table), 2023 WL 129426, at *2 (Pa. Super. Ct. Jan. 9, 2023).  Following protracted proceedings regarding whether Chambers voluntarily waived his right to counsel in the PCRA proceedings, counsel's subsequent request to withdraw from representing Chambers, and Chambers's request to proceed pro se, the Court of Common Pleas dismissed the PCRA petition on January 27, 2022.  See id.  Chambers appealed, arguing, inter alia: (1) that his due process rights were violated during trial because Muhammad was never listed as the victim of the crime in his charging documents but was named as the victim in the Court of Common Pleas' jury instructions; (2) that his counsel provided ineffective assistance by failing to raise these due process issues; and (3) that his sentence exceeded the statutory maximum allowable sentence.  See id. at *3–4.  The Superior Court affirmed dismissal of the PCRA petition, holding in relevant part: (1) that Chambers waived the claim that the sentence exceeded the statutory maximum; (2) that Chambers's claim relating to the naming of Muhammad as the victim in the jury instructions was previously litigated on direct appeal; and (3) that the ineffective assistance of counsel claim failed on its merits.  See id. at *4–7.  Chambers did not appeal to the Pennsylvania Supreme Court.

Chambers filed the instant petition on March 15, 2023, and the Court received and docketed the petition on March 22, 2023.  (Doc. No. 1 at 15.)  He filed a supporting brief on the same day.  (Doc. No. 2.)  Chambers advances four claims for habeas corpus relief: (1) that his trial counsel provided ineffective assistance of counsel by failing to object to an illegal sentence; (2) that his due process rights were violated because he was convicted and sentenced for the attempted murder of Muhammad despite Muhammad not being named as the victim in the information charging him with the crime; (3) that his sentence for attempted murder was illegal and unconstitutional because a sentence of 20–40 years' imprisonment for attempted murder

3

requires the victim to suffer serious injuries but Muhammad suffered no injuries; and (4) that he was subjected to an illegal and unconstitutional sentence because he was sentenced to 9–18 years of imprisonment for a Grade 2 felony, despite 5–10 years purportedly being the maximum sentence for such a conviction under Pennsylvania law. (Doc. No. 1 at 5–10.)

The Court denied the petition with prejudice on September 5, 2023. (Doc. Nos. 10–11.) The Court first considered Chambers's due process claim, which the Court characterized as "based on supposed discrepancies between the language of the information charging Chambers with attempted murder and the trial court's jury instructions" as to whether Walters or Muhammad was the intended victim of the attempted murder. (Doc. No. 10 at 6–7.) The Court noted that the claim was denied on its merits by the Superior Court based on a finding that the information did not name an intended victim and instead merely stated that "Walters suffered gunshot wounds to his upper body as a result of the commission of the crime." (Id. at 7–8 (quoting Chambers, 2014 WL 10558243, at *4).) The Court found that the Superior Court's conclusion was neither contrary to clearly established federal law nor an unreasonable application of federal law. (Id. at 8–9.) In doing so, the Court noted that it was "of no moment that the attempted murder charge was based on Chambers having an intent to kill Muhammad but subsequently shooting Walters" because "Pennsylvania law recognizes the doctrine of 'transferred intent,' whereby a defendant's specific intent to kill one individual is 'transferred' when the defendant's actions result in harm to an individual different from the individual he intended to harm." (Id. at 9 (quoting Commonwealth v. Nevels, 203 A.3d 229, 242 n.13 (Pa. Super. Ct. 2019)).

The Court likewise denied Chambers's claims that his attempted murder sentence was illegal and that his trial counsel was ineffective. The Court noted that the premise of the illegal

4

sentence claim—that Chambers could not be convicted of attempted murder because Muhammad was the victim of the crime but had not suffered any serious injuries—was flawed because Walters was the victim of the crime and had suffered serious injuries. (Id. at 9.) The Court noted that the Court of Common Pleas' jury instructions basing the attempted murder charge on the intent to kill Muhammad did not alter this fact because the transferred intent doctrine allowed such a theory. (Id.) Similarly, the Court noted that the ineffective assistance of counsel claim was meritless because it was based on counsel's failure to object to the variance between the information and the jury instructions but the variance itself was not something that could give rise to a meritorious objection. (Id. at 9–10.)

Finally, the Court found unavailing Chambers's argument that his sentence exceeded the statutory maximum. (Id. at 10.) The Court noted that the argument was based on the premise that Chambers was charged with a crime under 18 Pa.C.S. § 2702(a)(4) but subsequently convicted under 18 Pa.C.S. § 2702(a)(1). (Id.) The Court found that this argument was "belied by the state court record" because the information "clearly states" that Chambers was charged under 18 Pa.C.S. § 2702(a)(1). (Id.)

Chambers filed a motion to alter or amend the Court's judgment pursuant to Federal Rule of Civil Procedure 59 on September 22, 2023. (Doc. No. 12.) The Court liberally construes the motion as advancing four claims for reconsideration: (1) that the Court's reliance on the transferred intent doctrine in denying habeas corpus relief was erroneous because the Court of Common Pleas "stipulated the omittance" of the transferred intent doctrine from the trial during the charge conference; (2) that the Court erred by relying on the transferred intent doctrine without first giving Chambers the opportunity to argue that a transferred intent argument was only waived in state court based on the ineffective assistance of PCRA counsel in failing to

advance the claim; (3) that the Court erred in its conclusion that Chambers was charged under 18 Pa.C.S. § 2702(a)(1); and (4) that the Court abused its discretion by failing to hold an evidentiary hearing prior to denying the petition.

## II.   STANDARD OF REVIEW

A party seeking reconsideration of a district court's order must show either (1) "an intervening change in the controlling law"; (2) the availability of new evidence that was not available when the court issued its prior order; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."  See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

## III.   DISCUSSION

The Court will first consider Chambers's argument that the Court erred by relying on the transferred intent doctrine in denying his due process claim.  Chambers argues that the transferred intent doctrine is not at issue in this case because the Court of Common Pleas "stipulated the omittance" of the transferred intent doctrine during the charge conference portion of the trial.  (Doc. No. 12 at 1.)

This argument is meritless.  To begin, the Court would have denied relief on Chambers's due process claim even if it had not considered the transferred intent doctrine.  As the Court noted when it denied relief on the claim, the Superior Court concluded that Chambers's due process rights had not been violated because, contrary to his argument, the information did not name a victim with respect to the attempted murder charge but instead simply stated that Walters suffered injuries as a result of the conduct that gave rise to the charge.  (Doc. No. 10 at 7–8 (quoting Chambers, 2014 WL 10558243, at *4).)   The Superior Court's decision was neither

contrary to clearly established federal law nor an unreasonable application of federal law and is accordingly entitled to deference from this Court.

Moreover, even if the transferred intent doctrine were essential to this Court's analysis, there would still be no basis to reconsider the denial of Chambers's habeas corpus petition. His argument is based on an exchange between the Court of Common Pleas and counsel for the Commonwealth during the charge conference in which the Court of Common Pleas supposedly "stipulated the omittance" of the transferred intent doctrine from the case. During the relevant portion of the charge conference, the Court of Common Pleas and counsel for the Commonwealth discussed whether counsel was requesting a jury instruction on transferred intent, which resulted in the following exchange:

> THE COURT:  . . . I don't think that the transferred intent charge needs to be given with respect to the interrogatory question.  But it may be appropriate to give with respect and in conjunction with the attempted murder charge.  So let me -- going back and forth, but are you requesting the transferred intent charge be given to the jury?  Let's start there.
> MR. BAER:  Well, it depends.  It depends what you're limiting me to.  If I understood Mr. Rentschler's argument, it sounds like he's trying to box us in to limiting the attempt murder theory only to Jalil Walters.
> MR. RENTSCHLER:  No.
> MR. BAER:  Well, then -- then I –
> THE COURT:  Well, wait.
> MR. BAER:  With due respect, I don't understand the argument then.
> THE COURT:  No, no, no.  I'm going to -- you've requested with the attempted murder charge, that element one is, first, the defendant did a certain act; that is, he fired a handgun at Ibrahim Muhammad.  That's what you're requesting.
> MR. BAER:  Yes.
> THE COURT:  Period.  And second, that the act -- alleged act defendant did specific intent to kill Ibrahiim Muhammad; that is, he had a fully informed intent to kill and was conscious of his own intention.  And third, the act constitutes a substantial step towards commission of the killing of -- the defendant intended to bring about.
> I'm fine with that.
> MR. BAER:  Okay.
> THE COURT:  And so that -- that charge will be given, as is.
> MR. BAER:  Okay.

>THE COURT: As I just indicated. Then the question would be, do you want the transferred intent charge as I have stated a few minutes ago conforming to the facts of this case given right after that attempted murder charge?
>
>MR. BAER: Now that I think about it no. Because -- and let me just add, the only reason that Jalil Walters appears in the attempt murder charge is that Apprendi requires that, it requires that it be on the criminal information, the formal charging document, the allegation that serious bodily injury was caused, because the jury must find that beyond a reasonable doubt.
>
>That's why he is named in the charging document under attempted murder. I think it is sufficient for you to instruct as you just explained, on attempted murder, but the interrogatory would just read in the course of committing the attempt murder, do you find that Jalil Walters suffered serious bodily injury. I think --
>
>THE COURT: No, it doesn't say. That's not what it says in the --
>
>MR. BAER: Right, but that's the general theory.
>
>THE COURT: You may argue that. That's your argument.
>
>MR. BAER: Correct. And I think Apprendi is satisfied with that -- by that.
>
>THE COURT: So you're withdrawing your request to have me charge on transferred intent?
>
>MR. BAER: Yes. I mean, I'm not sure I made the request. It was just kind of thinking aloud. But now that I have thought it through and we've discussed it, I don't think it's necessary.
>
>THE COURT: I think I'm inclined to give it if you request it. If you're not requesting, then I won't give it.
>
>MR. BAER: If you are instructing that the attempt applies to Ibrahiim Muhammad, I'm fine with that. Because I think you don't need the transferred intent to satisfy the elements of that crime.
>
>THE COURT: Okay. And you'll argue that in your closing that – you'll make that argument in closing.
>
>MR. BAER: Yes.

(Doc. No. 12-1 at 1–2.)

Contrary to Chambers's argument, the above exchange does not show that the Court of Common Pleas omitted the transferred intent doctrine from being considered as part of the case; it simply shows that counsel for the Commonwealth believed a jury instruction on transferred intent was not necessary. Nothing the Court of Common Pleas stated barred the transferred intent doctrine from being considered in the case. In fact, the Court of Common Pleas specifically noted in its discussion with counsel that counsel was going to argue that Muhammad was the intended victim of the attempted murder. See id. Accordingly, Chambers's argument

8

that the Court erred in noting that Chambers's intent to kill Muhammad could transfer to his actions in shooting Walters is meritless.

Chambers's second argument—that the Court should have allowed him to argue PCRA counsel's ineffectiveness as cause for the procedural default of a transferred intent claim before it relied on the transferred intent doctrine in denying his petition—is similarly meritless.  Even if the Court had followed Chambers's suggested procedure of providing notice of its intent to cite the transferred intent doctrine in denying his petition, the purported ineffective assistance of PCRA counsel would not be a sufficient basis to excuse the procedural default of an argument based on transferred intent in state court.  The ineffective assistance of PCRA counsel can only excuse the procedural default of a claim of ineffective assistance of trial counsel; it does not apply to other categories of procedurally defaulted claims.  See Davila v. Davis, 582 U.S. 521, 529–30 (2017).

Turning to Chambers's third argument for reconsideration, Chambers asserts that the Court erred in concluding that he was charged with a crime under 18 Pa.C.S. § 2702(a)(1) rather than 18 Pa.C.S. § 2702(a)(4) because the charge under 18 Pa.C.S. § 2702(a)(1) was "only cited on a bill of information, and by the district attorney." (Doc. No. 12 at 2.)  Chambers does not cite any law to support the assertion that a bill of information would be insufficient to charge a defendant with a crime.  This claim is accordingly denied as meritless.

Finally, the Court is unpersuaded by Chambers's argument that the Court abused its discretion in declining to conduct an evidentiary hearing.  When a petitioner seeks a writ of habeas corpus in federal court, the factual record of the case "is limited to the record that was before the state court that adjudicated the claim on the merits." See Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  Thus, if a state court has previously conducted an evidentiary hearing on

9

the petitioner's claims, the federal court cannot supplement the factual record by conducting a second evidentiary hearing.  See Fooks v. Superintendent, Smithfield SCI, 96 F.4th 595, 597–98 (3d Cir. 2024).  This Court is accordingly barred from conducting an evidentiary hearing to supplement the existing state court record.  See id.

To the extent Chambers is arguing that the Court should have conducted an evidentiary hearing based on his failure to develop the factual record during the state court hearing, his argument is similarly unavailing.  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") specifies that when a habeas corpus petitioner has failed to develop the factual basis of a claim in State court proceedings:

> [T]he court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> **(A)** the claim relies on—
>
> > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See 28 U.S.C. § 2254(e)(2).  If a petitioner cannot satisfy this standard, the federal court is barred from conducting an evidentiary hearing.  See Shinn v. Ramirez, 596 U.S. 366, 371 (2022).  Chambers has not argued that his claims rely on a new rule of constitutional law or a factual predicate that could not have been previously discovered.  Thus, contrary to Chambers's argument, the Court concludes that it was not permissible for it to conduct an evidentiary hearing on his claims.

## IV. CONCLUSION

For the foregoing reasons, Chambers's motion to alter or amend judgment will be denied. A certificate of appealability will not issue because jurists of reason would not debate the correctness of this procedural ruling. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania
